UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 19-2733

———————

COREY DONOVAN; LINDA DONOVAN

v.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY

Appellant

———————

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil Action No. 2-17-cv-03940)
District Judge: Honorable Gerald A. McHugh

———————

Submitted Under Third Circuit L.A.R. 34.1(a)
May 26, 2020

Before: AMBRO, HARDIMAN, and RESTREPO, Circuit Judges

———————

PETITION FOR CERTIFICATION OF QUESTIONS OF STATE LAW

———————

To the Honorable Justices of the Pennsylvania Supreme Court:

This matter came before the United States Court of Appeals for the Third Circuit on appeal from a decision by the United States District Court for the Eastern District of Pennsylvania. *See Donovan v. State Farm Mut. Auto. Ins. Co.*, 392 F. Supp. 3d 545, 546–53 (E.D. Pa. 2019). This panel (Ambro, Hardiman, Restrepo, JJ.), having read the briefs and submissions of the parties and having reviewed the applicable decisions of the Pennsylvania courts, believes this appeal raises important and unsettled issues concerning underinsured motorist coverage under Pennsylvania's Motor Vehicle Financial Responsibility Law, 75 Pa. Cons. Stat. § 1701, *et seq.* (the "Motor Vehicle Law"). We therefore request that the Pennsylvania Supreme Court accept certification under Pennsylvania Rule of Appellate Procedure 3341. We have authority to certify questions of state law under Local Appellate Rule 110.1 of the United States Court of Appeals for the Third Circuit.

## I.    Factual and Procedural Background

The relevant facts are undisputed. In 2015, Appellee Corey Donovan was seriously injured in an accident while driving his motorcycle. He settled with the driver of the other vehicle involved, receiving the $25,000 liability limit of that driver's insurance policy. He then made a claim for underinsured motorist benefits[1] under a policy issued to him by Appellant State Farm Mutual Automobile Insurance Company

---

[1] Underinsured motorist coverage provides benefits "when a third-party tortfeasor injures or damages an insured and the tortfeasor lacks sufficient insurance coverage to compensate the insured in full." *Gallagher v. GEICO Indem. Co.*, 201 A.3d 131, 132 n.1 (Pa. 2019).

2

that covered his motorcycle (the "Motorcycle Policy"). State Farm accepted the claim and paid Corey the $50,000 policy limit.

Corey also made a claim for underinsured motorist benefits under a policy State Farm issued to his mother (with whom he resided), Appellee Linda Donovan (the "Automobile Policy"). The Automobile Policy provided coverage for three vehicles (none of which was the motorcycle), limited to $100,000 in underinsured motorist benefits. State Farm denied Corey's claim for benefits under the Automobile Policy, explaining that the policy provided only "non-stacking"[2] underinsured motorist coverage.

Corey and Linda Donovan sued State Farm in the Court of Common Pleas of Philadelphia County, seeking a judicial declaration that Corey was entitled to underinsured motorist benefits under the Automobile Policy. After State Farm removed the action to federal district court, the parties stipulated to the facts and cross-moved for summary judgment.

State Farm argued that Corey was not entitled to coverage for two reasons. First, it argued that Linda had declined stacked underinsured motorist coverage under the Automobile Policy by signing the waiver form specified in the Motor Vehicle Law, *see* 75 Pa. Cons. Stat. § 1738(d). Second, State Farm argued that the Automobile Policy contained what is commonly referred to as a "household vehicle exclusion," which excludes from coverage an accident in which the insured was occupying a vehicle owned by the policyholder or a member of the policyholder's household but not listed in the

---

[2] "'Stacking' refers to the practice of combining the insurance coverage of individual vehicles to increase the amount of total coverage available to an insured." *Gallagher*, 201 A.3d at 132 n.1.

policy. *See generally Gallagher*, 201 A.3d at 133 (describing a "household vehicle exclusion" similar to one at issue here).[3]  In this case, Corey (the insured) is a member of Linda's household and was occupying a vehicle (his motorcycle) that was not listed in the Automobile Policy.

The Donovans responded that Linda had not declined stacked underinsured motorist coverage under the Automobile Policy because the waiver form she signed addressed only "*intra*-policy stacking"—that is, the stacking of coverage available to an insured for different vehicles under the *same* policy, as opposed to "*inter*-policy" stacking, which permits an insured to stack the coverage provided under separate policies.  Because the form did not address inter-policy stacking, the Donovans argued, the form could not validly waive stacked coverage under the Pennsylvania Motor Vehicle Law, and thus Corey is entitled to coverage.  As to the household vehicle exclusion, the Donovans argued that it was unenforceable because it served as a *de facto* waiver of stacked coverage.

The District Court agreed with the Donovans and granted them summary judgment.  The Court explained that, although Linda had signed the waiver form specifically prescribed by a provision of the Motor Vehicle Law (75 Pa. Cons. Stat. § 1738(d)), that form describes only intra-policy, not inter-policy, stacking, and is thus insufficient to waive inter-policy stacking under the Motor Vehicle Law.  *Donovan*, 392

---

[3] Specifically, the Automobile Policy provides: "THERE IS NO COVERAGE FOR AN ***INSURED*** WHO SUSTAINS ***BODILY INJURY*** WHILE ***OCCUPYING*** A MOTOR VEHICLE ***OWNED BY YOU*** OR ANY ***RESIDENT RELATIVE*** IF IT IS NOT ***YOUR CAR*** OR A ***NEWLY ACQUIRED CAR***."  App. 391.  The parties do not dispute that this provision would be applicable if enforceable.

F. Supp. 3d at 549–51.  And because Linda had not validly waived inter-policy stacking under the Motor Vehicle Law, the household exclusion in the Automobile Policy was an unenforceable, *de facto* waiver of coverage.  *Id.* at 551–52.

## II.    Discussion of Questions of Pennsylvania Law

### A. *Is the Waiver Form Prescribed by the Motor Vehicle Law Sufficient to Waive Inter-Policy Stacking?*

In *Craley v. State Farm Fire and Casualty Co.*, 895 A.2d 530, 540–42 (Pa. 2006), the Pennsylvania Supreme Court considered whether an insured had waived inter-policy stacking under the Motor Vehicle Law by signing the form specified in section 1738(d), which provides as follows:

> By signing this waiver, I am rejecting stacked limits of uninsured motorist coverage under *the policy* for myself and members of my household under which the limits of coverage available would be the sum of limits for each motor vehicle insured under *the policy*.  Instead, the limits of coverage that I am purchasing shall be reduced to the limits stated in *the policy*.  I knowingly and voluntarily reject the stacked limits of coverage.  I understand that my premiums will be reduced if I reject this coverage.

(emphases added).  The Court concluded that this language—specifically, the use of the singular in the phrase "*the policy*"—"does not clearly address an inter-policy stacking waiver, which would involve the limits for each motor vehicle under the *policies*." *Craley*, 895 A.2d at 541 (quoting 75 Pa. Cons. Stat. § 1738(d)).  While noting that the statutorily prescribed waiver form was unclear as to inter-policy stacking, the Court in *Craley* concluded that the policyholder nevertheless "had sufficient notice" that he was waiving inter-policy stacking given the particular circumstances of that case.  *Id.*  There the policyholder only insured one vehicle in the policy under which coverage was claimed.  *See id.* at 542.  Hence, in signing the waiver form prescribed by

subsection 1738(d), the policyholder "could not have thought he was receiving a reduced premium for waiving *intra*-policy stacking because there could be no intra-policy stacking with only one vehicle on 'the policy.'" *Id.* (emphasis added).

In a footnote, the Court noted that its consideration of the issue "raises questions as to whether the waiver would be knowing if [the policyholder]'s policy had covered more than one vehicle." *Id.* at 542 n.18. The Court explained that, in such a case, a policyholder "reasonably could assume that he received a reduced premium for waiver of the stacking of the limits regarding the vehicles insured by 'the policy'"—that is, intra-policy stacking—and still have "no knowledge that he was waiving stacking of the applicable limits of 'the policy' to [a separate] policy," that is, inter-policy stacking. *Id.* Accordingly, the Court "urge[d] the legislature or the [Pennsylvania Insurance] Commissioner to clarify whether and how insurers may secure a valid waiver in such a case." *Id.*

But neither the legislature nor the Insurance Commissioner addressed this question, and now, more than 14 years later, this case presents the situation identified by the Court in *Craley*. Linda's Automobile Policy covered not just one vehicle, but three. So in signing the waiver form prescribed by subsection 1738(d), did Linda knowingly waive inter-policy stacking, such that Corey cannot stack the policy's benefits with those he has already received from his Motorcycle Policy? Citing the footnote from *Craley*, the Donovans argue—and the District Court held—that the answer is no. They contend that, as the Pennsylvania Supreme Court stated in *Craley*, Linda "reasonably could assume" she was waiving intra-policy stacking for her three vehicles under the

Automobile Policy "with no knowledge" that she was also waiving inter-policy stacking with coverage under a separate policy. Donovan Br. at 31 (citing *Craley*, 895 A.2d at 542 n.18). And State Farm could have made a waiver of inter-policy stacking clear, the Donovans maintain, by either modifying the form prescribed by subsection 1738(d) or seeking guidance from the Insurance Commissioner.

State Farm responds that the statement from *Craley* is dicta, and that by prescribing the exact language for a waiver form set out in subsection 1738(d), the legislature intended that form to be sufficient to waive both intra-policy and inter-policy stacking. And State Farm maintains that it could not have modified the waiver form, as the Donovans suggest, without running afoul of another subsection of the same statute— subsection 1738(e)—which provides that "[a]ny rejection form that does not comply with this section is void."

As the parties agree, this is a significant issue of Pennsylvania law that has not yet been addressed by the Pennsylvania Supreme Court.

      B. *Does the Household Vehicle Exclusion in the Automobile Policy Preclude Corey From Claiming Stacked Underinsured Motorist Benefits?*

If inter-policy stacking of underinsured motorist benefits under the Automobile Policy was not validly waived, the next question is whether the household vehicle exclusion in the policy is enforceable such that it precludes coverage for Corey's claim. Recently, in *Gallagher*, 201 A.3d at 131, the Pennsylvania Supreme Court considered whether a household vehicle exclusion is enforceable where it would preclude an insured from recovering stacked underinsured motorist coverage and the insured had elected that

coverage.  *Id.* at 137–39.  The insured in *Gallagher* had purchased two policies from

GEICO, one covering his motorcycle, the other covering his two automobiles.  *Id.* at

132–33.  The insured was injured while driving his motorcycle, and after receiving the

limits of both the tortfeasor's liability coverage and the underinsured motorist coverage

under his own motorcycle policy, he made a claim to GEICO for the stacked coverage

under his automobile policy.  *Id.*  GEICO denied the claim, maintaining that, while the

insured had elected stacked coverage under the automobile policy, the policy's household

vehicle exclusion barred coverage.  *Id.* at 133.  The Court disagreed, holding that the

exclusion was unenforceable and explaining:

> This policy provision, buried in an amendment, is inconsistent with the unambiguous requirements [of] Section 1738 of the [Motor Vehicle Law] under facts of this case insomuch as it acts as a *de facto* waiver of stacked [underinsured motorist] coverage provided for in the [Motor Vehicle Law], despite the indisputable reality that [the insured] did not sign the statutorily-prescribed [underinsured motorist] coverage waiver form.  Instead, [the insured] decided to purchase [underinsured motorist] coverage under both of his policies, and he paid GEICO premiums commensurate with that decision. He simply never chose to waive formally stacking as is plainly required by the [Motor Vehicle Law].

*Id.* at 138.

The Donovans argue, and the District Court held, *see Donovan*, 392 F. Supp. 3d at

552, that *Gallagher*'s holding is equally applicable here, and thus the household vehicle

exclusion in the Automobile Policy does not bar Corey's claim.  The Donovans explain

that, for the reasons discussed above, Linda never validly waived inter-policy stacking of

underinsured motorist benefits.  Thus, as in *Gallagher*, they assert the household vehicle

exclusion serves as an impermissible, *de facto* waiver of that coverage, and hence is

unenforceable.

State Farm responds that *Gallagher* is materially distinguishable from this case. There the insured making the claim was the policyholder on both policies. And the insured policyholder had affirmatively elected stacked coverage under both policies. Here, by contrast, the policies were issued to separate policyholders: the Motorcycle Policy to Corey and the Automobile Policy to Linda. And here, unlike in *Gallagher*, neither Corey nor Linda had affirmatively elected stacked coverage.[4] Thus, State Farm reasons, the concern behind the Court's holding in *Gallagher*—that a household vehicle exclusion could be used to deprive a policyholder of receiving the stacked coverage he had specifically elected and paid for—is not present here.

The Pennsylvania Supreme Court has not yet considered whether *Gallagher*'s holding extends to this fact pattern.

C. *Does the Coordination-of-Coverage Provision in the Automobile Policy Limit the Amount of Benefits Corey May Recover to $50,000?*

In addition to arguing that Corey is not entitled to any underinsured motorist benefits under the Automobile Policy for the reasons set out above, State Farm argues—and argued unsuccessfully before the District Court—that Corey's recovery is limited to $50,000 by a coordination-of-coverage provision in the policy. *See Donovan*, 392 F. Supp. 3d at 552–53. That provision, entitled "If Other Underinsured Motor Vehicle Coverage Applies – Coverage W3," provides as follows:

1. If Underinsured Motor Vehicle Coverage provided by this policy and one or more other vehicle policies issued to ***you*** or any ***resident relative*** by

---

[4] As explained in Section II.A, above, State Farm's position is that Linda validly waived stacked underinsured motorist coverage under the Automobile Policy by signing the waiver form specified by the Motor Vehicle Law.

one or more of the ***State Farm Companies*** apply to the same bodily injury, then:

    a.   the Underinsured Motor Vehicle Coverage <u>limits of such policies will not be added together to determine the most that may be paid</u>; and

    b.   <u>the maximum amount that may be paid from all such policies combined is the single highest applicable limit provided by any one of the policies.</u> ***We*** may choose one or more policies from which to make payment.

App. 392 (underlining added).  Under this provision, State Farm contends, the maximum amount Corey may recover under the Motorcycle Policy and the Automobile Policy combined is the "single highest applicable limit" provided by either of the two policies, which is the $100,000 limit of the Automobile Policy.  *Id.*  And because Corey has already recovered $50,000 under the Motorcycle Policy, he may only recover $50,000 more under the Automobile Policy.

The Donovans respond—and the District Court agreed—that this provision is inapplicable because it pertains only to *unstacked* coverage under the Automobile Policy, and, for the reasons discussed above in Section II.A, Linda did not validly waive inter-policy stacked coverage.  *See Donovan*, 392 F. Supp. 3d at 552–53.  Specifically, the Automobile Policy defines "Coverage W3" as the "Non-Stacking Option" and "Coverage W" as the "Stacking Option."  App. 388.  The policy further provides that which of these coverages applies is shown by a symbol—either "W" or "W3"—displayed "on the Declarations Page."  *Id.*  While State Farm notes that the Declarations Page displays "W3," reflecting that Linda waived stacked coverage, the Donovans maintain—and the District Court agreed—that the lack of a valid waiver of inter-policy stacking renders the

"Coverage W3" coordination-of-coverage provision inapplicable.  *See Donovan*, 392 F. Supp. 3d at 553.

The Pennsylvania Supreme Court has not yet considered whether a coordination-of-coverage provision designated by a policy as applicable to *unstacked* underinsured motorist coverage remains applicable where the named insured did not validly waive inter-policy stacking.

### III.    Reasons for Accepting Certification

Both the Donovans and State Farm request that we certify the issues in this appeal. We agree that certification is appropriate and respectfully request that the Pennsylvania Supreme Court accept certification.

Under Pennsylvania Rule of Appellate Procedure 3341(c), the Pennsylvania Supreme Court "shall not accept certification unless all facts material to the question of law to be determined are undisputed, and the question of law is one that the petitioning court has not previously decided."  As noted above, the parties have stipulated to all material facts, leaving only questions of Pennsylvania law that have not been previously decided by this Court.

Rule 3341(c) further requires that there be "special and important reasons" for certification, including that the "question of law" "is one of first impression and is of such substantial public importance as to require prompt and definitive resolution by the [Pennsylvania] Supreme Court," or "concerns an unsettled issue of the . . . construction . . . of a [Pennsylvania] statute."  Pa. R. App. P. 3341(c)(1), (3).  As noted above, these questions of Pennsylvania law have not previously been decided by the

Pennsylvania Supreme Court. And the questions are of "substantial public importance" given the ubiquity of both the household vehicle exclusion and the stacked-coverage waiver form prescribed by subsection 1738(d), making these issues likely to recur. Moreover, resolving these unsettled issues requires construing and reconciling provisions of the Motor Vehicle Law, specifically the provision specifying the form language for waiving stacked coverage, subsection 1738(d), and the provision, subsection 1738(e), voiding any waiver form that does not comply with the remainder of section 1738.

### IV. Party Recommendation

We recommend that State Farm be designated as the Appellant and Corey and Linda Donovan be designated as the Appellees.

\* \* \* \* \*

NOW, THEREFORE, the following three questions of law are certified to the Pennsylvania Supreme Court for disposition according to the rules of that Court:

1. Is a named insured's signing of the waiver form set out at 75 Pa. Cons. Stat. § 1738(d) sufficient to waive inter-policy stacking of underinsured motorist benefits under Pennsylvania's Motor Vehicle Financial Responsibility Law, where the policy insures more than one vehicle at the time the form is signed?

2. If the answer to Question 1 is no, is a household vehicle exclusion contained in a policy in which the named insured did not validly waive inter-policy stacking enforceable to bar a claim made by a resident relative who is injured while

occupying a vehicle owned by him and not insured under the policy under which the claim is made?

3. If the answers to Questions 1 and 2 are no, is the coordination-of-benefits provision in the Automobile Policy nonetheless applicable, such that it limits Corey Donovan's recovery of underinsured motorist benefits under the policy to $50,000, or does the lack of a valid waiver of inter-policy stacking render that provision inapplicable?

We shall retain jurisdiction of the appeal pending resolution of this certification.

United States Court of Appeals for the Third Circuit

By:     s/  Thomas L. Ambro

Thomas L. Ambro, Circuit Judge
Thomas M. Hardiman, Circuit Judge
L. Felipe Restrepo, Circuit Judge

Dated: May 28, 2020
cc: James C. Haggerty, Esq.
    Louis E. Bricklin, Esq.
    Sarah E. Crosley, Esq.
    John J. McGrath, Esq.



A True Copy:

Patricia S. Dodszuweit, Clerk